## THE SOUTH SHORE COUNTRY CLUB

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1907.*

1. DRAM-SHOPS—*right to sell intoxicating liquors at retail not a common right.* The right to engage in the business of selling intoxicating liquors at retail is not now a common right, and it can be exercised only in the manner and upon the terms which the statute prescribes.

2. SAME—*court cannot disregard the legislative definition of a "dram-shop."* The statute defines a dram-shop to be a place where spirituous or vinous or malt liquors are retailed by less quantity than one gallon, and the fact that the popular acceptation of the term "dram-shop" is restricted to a place where liquors are sold at a public bar to the public generally, does not authorize the courts to give such restricted meaning to the term, in view of its legislative definition.

3. SAME—*a profit is not essential to a sale.* A profit upon intoxicating liquors dispensed by a social club to members paying therefor is not essential to constitute the transaction a sale, nor is it material that the dispensing of such liquors is merely incidental to the main purpose of the club, nor that only members of the club and accompanying friends are admitted.

4. SAME—*stockholders of corporation are not tenants in common of property.* Stockholders of an incorporated social club are not tenants in common of the club property, including the stock of intoxicating liquors; and the distribution of such liquors to members paying a fixed price therefor cannot be regarded as a mere equitable distribution of the common property among its owners.

5. SAME—*a social club, though not incorporated, is not a partnership.* An association organized merely for social, literary, scientific or political purposes, although not incorporated, is not a partnership, and the members have no individual rights in the club property and own no proportionate share thereof, but have only the right to its joint use so long as they remain members.

6. SAME—*transfer of specific part of common property for stipulated price is a sale.* Even though property is owned by persons as tenants in common, if a specific portion of the property is transferred to one or more of such persons for a stipulated price the transaction is a sale.

7. SAME—*social club dispensing liquors to members is within meaning of Dram-shop act.* A social club, incorporated or unin-

corporated, which dispenses intoxicating liquor to members, who pay a fixed price therefor, even though no profit is made, is within the meaning of the Dram-shop act, notwithstanding the club is organized in good faith for social purposes, and not as a mere device to evade the statute requiring a dram-shop license to be obtained. (*People* v. *Law and Order Club*, 203 Ill. 127, adhered to.)

APPEAL from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

GEORGE P. MERRICK, (SILAS H. STRAWN, and MASON B. STARRING, of counsel,) for appellant:

The Dram-shop act is a penal statute and should be strictly construed. *Albrecht* v. *People*, 78 Ill. 510; *Cruse* v. *Aden*, 127 id. 231; *Schulte* v. *Schleeper*, 210 id. 357.

The provisions of the Dram-shop act are aimed at dram-shops and those engaged in the liquor traffic or business. *Cruse* v. *Aden*, 127 Ill. 231; *People* v. *Cregier*, 138 id. 401; *Strauss* v. *Galesburg*, 203 id. 234; *Hogg* v. *People*, 15 Ill. App. 288.

In the construction of a statute courts are not confined to the literal meaning of the words of the statute, but the intention may be collected from the necessity or object of the act, and the words may be enlarged or restricted according to its true intent. *Castner* v. *Walrod*, 83 Ill. 171; *Cruse* v. *Aden*, 127 id. 232; *People* v. *Chicago*, 152 id. 546; *Tudor* v. *Railroad Co.* 154 id. 129; *Railroad Co.* v. *People*, 154 id. 558; *People* v. *Hinrichsen*, 161 id. 223; *People* v. *Harrison*, 191 id. 257.

A statute may be construed contrary to its literal meaning when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention. Sutherland on Stat. Const. sec. 324; *People* v. *Hoffman*, 97 Ill. 234; *Hogan* v. *Akin*, 181 id. 448.

The furnishing of intoxicating liquors without profit by a club organized and existing in good faith, with a limited

and selected membership, and which furnishing is merely incidental to the main purpose of the club, does not constitute a sale, within the meaning of the statute prohibiting sales without a license.   23 Cyc. 205;  17 Am. & Eng. Ency. of Law, (2d ed.)  361;  Freund on Police Power, sec. 456; Black on Intoxicating Liquors, sec. 142;  *Klein* v. *Livingston Club,* 177 Pa. St. 224;  *State* v. *St. Louis Club,* 125 Mo. 308;  *People* v. *Adelphi Club,* 149 N. Y. 5;  *Commonwealth* v. *Pomphret,* 137 Mass. 564;  *Tennessee Club* v. *Dwyer,* 79 Tenn. 452;  *Commonwealth* v. *Smith,* 102 Mass. 144;  *Piedmont Club* v. *Commonwealth,* 87 Va. 540;  *Columbia Club* v. *McMaster,* 35 S. C. 1;  *State* v. *Austin Club,* 89 Tex. 20; *Barden* v. *Montana Club,* 10 Mont. 330;  *Commonwealth* v. *Ewing,* 145 Mass. 119;  *Graff* v. *Evans,* L. R. 8 Q. B. 373.

JOHN J. HEALY, State's Attorney, (HOWARD S. TAYLOR, and CHURCH, McMURDY & SHERMAN, of counsel,) for appellee:

The furnishing and dispensing of liquor by a club to its members in the manner admitted in this case constitute a sale, within the meaning of the statute.  *People* v. *Law and Order Club,* 203 Ill. 127;  *Wright* v. *People,* 101 id. 126; *State* v. *Social Club,* 73 Md. 98;  *State* v. *Boston Club,* 45 La. Ann. 585;  *Newark* v. *Essex Club,* 53 N. J. L. 99;  *Marmont* v. *State,* 48 Ind. 21;  *Martin* v. *State,* 59 Ala. 34; *State* v. *Lockyear,* 95 N. C. 633;  *State* v. *Neis,* 108 id. 787; *Kentucky Club* v. *Louisville,* 92 Ky. 309;  *State* v. *Shumate,* 44 W. Va. 490;  *People* v. *Soule,* 74 Mich. 250;  *Wittig* v. *United States,* 2 Lowell, 44.

Shareholders or stockholders in a corporation are not tenants in common nor co-owners of the property of the corporation in any sense, but the title is in the corporate body.   10 Cyc. 373, and cases cited;  Smith on Personal Property, sec. 30;  Cook on Stockholders, secs. 6, 11, 12, 709;  *Gibbons* v. *Mahon,* 136 U. S. 549;  *Humphreys* v. *McKissock,* 140 U. S. 304.

There is no common law right in Illinois to sell liquor at retail. The business can only be carried on under the terms and conditions prescribed by law. This includes the requirement of a license. All unlicensed sales are unlawful. *People* v. *Creiger,* 138 Ill. 401.

The fact that appellant does not sell intoxicating liquors to the public generally, but only to members of the club, does not take appellant out of the operation of the statute. *Rickert* v. *People,* 79 Ill. 85; *People* v. *Law and Order Club,* 203 id. 127; *Wright* v. *People,* 101 id. 126; *Noecker* v. *People,* 91 id. 494; *Hewitt* v. *People,* 186 id. 340.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of court the State's attorney of Cook county filed in the superior court of said county an information in the name of the People, against appellant, a corporation not for pecuniary profit, organized under the general incorporation laws of this State for pleasure, social recreation and the promotion of outdoor sports, to require it to show by what warrant it sells intoxicating liquors without a license, and praying that its charter should be forfeited and it be ousted of its corporate franchise, or that such other penalty be imposed as the court might deem just. To the information appellant filed a plea showing the nature of the corporation and its objects, and the circumstances and conditions under which it keeps a stock of intoxicating liquors in its club house and furnishes the same to its members. A general demurrer to the plea was sustained, and appellant having elected to stand by the plea, the court adjudged it to be guilty, as charged in the information, of a misuse of its corporate powers by selling intoxicating liquors without a license and imposed a fine of $500, together with the costs. From that judgment an appeal was taken to this court.

The facts stated in the plea, which the court adjudged insufficient as a defense to the charge of the information,

are as follows: Appellant is a corporation not for pecuniary profit, and its objects, as stated in its charter, are pleasure, social recreation and the promotion of outdoor sports. The number of resident members is limited to two thousand and non-resident members to two hundred and fifty. An applicant for membership must be recommended, in writing, by at least two resident members, and applications are referred to and acted upon by a board of governors. The vote upon admission is by secret ballot, two negative votes excluding, and the entrance fee is $200 and annual dues $50, payable semi-annually. Membership is terminated by resignation, failure to pay dues or conduct at variance with the purpose of the corporation or the house rules. Each member is given a certificate evidencing his respective share in the club and his right to its privileges. Appellant owns a club house and property in Chicago in that portion of the city which was formerly the village of Hyde Park, wherein no license can be issued to any one to keep a dram-shop, and the club property represents an expenditure of $250,000. In addition to the club house, appellant has tennis courts, polo fields, golf courses, stables and other buildings, and the club house is an elaborate one, including a library, reading rooms, card and billiard rooms, a dining room, restaurant, and other facilities. It maintains a riding school, with horses and equipment, and employs a riding master and teachers. It holds regular receptions, lectures, musical and literary entertainments, and the library and reading room is well stocked, and it serves lunches and dinners. The purpose of the club is the physical and mental improvement of its members, and to that end physical and athletic exercises are provided for the improvement of the bodily and mental health of the members and their families. All the members share equally in the use of the house, grounds, library, literature and entertainments, but members are charged and pay for meals and liquors, and for the services of caddies, boatmen and teachers, and for horses, golf supplies and

special services. There are about fifty servants, including cooks, stewards, porters, waiters, hostlers and other help, and the membership includes many of the best known and most reputable men in the social and professional world in the city of Chicago. Appellant keeps a stock of intoxicating liquors in its club house, which it furnishes only to its members and their guests accompanying them, upon a member's written order therefor. It maintains a steward's room, used exclusively by the club steward for preparing and dispensing liquors. The member ordering liquor is charged with it, and the charges are paid upon bills rendered semi-monthly. The charge is no more than the amount paid by the appellant for the liquor and the service, but the charge is greater than the charge for similar supplies in places patronized by the public. The club has obtained a United States retail liquor dealer's license, but the plea avers that it was done unadvisedly and was not necessary.

The right to engage in the business of selling intoxicating liquors by retail is not now a common right, and it can be exercised only in the manner and upon the terms which the statute prescribes. (*People* v. *Cregier*, 138 Ill. 401.) The statute provides for licensing such sales and makes a sale without a license a criminal offense. It provides that whoever, not having a license to keep a dram-shop, shall sell any intoxicating liquor in any less quantity than one gallon, or in any quantity, to be drank upon the premises, shall be punished by fine or imprisonment or both; and if appellant has been guilty of a misuse of its corporate power by making sales of liquor to be drank upon its premises, the judgment of the superior court must be affirmed. The only question to be determined is whether the furnishing and delivery of intoxicating liquors by appellant to its own members, to be drank upon the premises, and which are paid for by the individual members to whom the same are furnished and delivered, constitute a sale. Counsel for appellant admits that the letter of the statute requires any and

every one, without exception, who sells intoxicating liquors
in any less quantity than one gallon, or in any quantity, to
be drank upon the premises, to take out a license to do so,
and he fully appreciates that the definition of a dram-shop
adopted by the legislature is broad enough to include any
place where intoxicating liquors are retailed in less quan-
tity than one gallon, but he says that appellant contests the
right to demand a license because it refuses to have its club
house considered a dram-shop or to be regarded as a dram-
shop keeper.   The argument is, that the court should not
take the language of the statute literally, and that the gen-
eral intent and spirit of the act do not require that it should
be so taken.

A dram-shop, as defined by the statute, is a place where
spirituous or vinous or malt liquors are retailed by less
quantity than one gallon, and it is true that the term has
in popular acceptation a more restricted meaning.  It is com-
monly used to designate a place where intoxicating liquor
is sold at a public bar frequented by the public without re-
striction, and if the legislature had failed to define what was
intended by the term "dram-shop," it would be reasonable
to presume that it was used in the ordinary and popular
sense; but, of course, the legislature had a right to define
what was meant by the term as used in the act, and the
courts are bound by the definition.   The argument of the
appellant is the same as that of the druggist Wright, who
felt himself aggrieved that his drug-store should be brought
within the definition of a dram-shop by the sale, in good
faith, of liquor for purely medical purposes.   His chief busi-
ness was the sale of drugs and medicines, and he did not
even sell intoxicating liquors as a beverage, as the appellant
does.   The court put in the background the popular idea
of the dram-shop, saying that undue importance was given
to that term, and enforced the law according to its literal
meaning.   The court said:   "The only safe course is to
enforce the law as the legislature has made it, and not de-

feat its execution upon some hypothetical theory of public policy that finds no place or recognition in the act itself." (*Wright* v. *People,* 101 Ill. 126.) Appellant's club house would be no more nor less a dram-shop with the license than without it, and if the facts bring it within the definition adopted by the legislature it must be held to be a dram-shop, whether the definition accords with the popular understanding or not.

The precise question here involved was decided in the case of *People* v. *Law and Order Club,* 203 Ill. 127, where it was held that the dispensing of intoxicating liquors by a social club to its members, without profit, constitutes a sale, and that the fact that a club is organized in good faith for social purposes, and not as a shift or device to evade the provisions of the Dram-shop act, is immaterial. We should not do more than refer to that decision were it not for the earnest argument of counsel for the appellant that what was there said on the subject was mere *obiter dicta* as well as wrong in principle and upon authority. The argument that the views expressed were *obiter dicta* is based on the ground that the court might have held the scheme of the club to be a mere shift and device to evade the statute. It is true that the facts raised an inference that the object of the club was to furnish a place and opportunities for dispensing intoxicating liquors, and a statement to that effect was made in the opinion, following the decision of the case and the conclusion of the court that the fact was immaterial. The brief and argument for the defendant in error in that case were substantially the same as for appellant in this case. The same cases were cited and relied upon, with the exception of some recent ones referred to hereafter, and the court did not turn aside from the issue in the case to a collateral subject in deciding that the transactions of the club constituted sales. The question whether or not a *bona fide* social club can dispense liquors to its members without profit and as incidental, merely, to its organization, without taking out a

dram-shop license, was argued and presented by counsel and submitted for decision, and there was no element of a merely incidental or collateral opinion in what the court said. The leading cases upholding the doctrines contended for by the defendant in error, to the effect that the furnishing of liquors to members of a club is not a sale but a mere transfer of the special property of the other members to one of them, or an equitable and convenient mode of distributing refreshments to the members, or a delivery to the member of his part of the liquor owned by the club, or a distribution among the members of a club of property that belonged to them, or a division among the members of a common stock of liquors according to a previously arranged system, were cited and considered. We spoke in that case with deliberation and within the issues involved, and said that we did not concur in the views of those courts; that much ingenuity had been expended in attempting to show that the distributing or furnishing of liquors to members by a club is not a sale, and that specious defenses of the character stated have received no consideration by courts except in prosecutions for the illegal sale of liquor.

Counsel, however, says that there are two very important and leading decisions made since that case was considered, to which our attention is most earnestly invited. We find upon examination of those cases that they follow, with only slight variation, the course of argument of the previous cases holding that such transactions do not constitute sales, and cite the same cases referred to in the *Law and Order case*. The first case is *Klein* v. *Livingston Club*, 177 Pa. 224. In that case the club was of the same high character as appellant and the membership was limited to one hundred residents of the city of Allentown. The court thought there was an implication that the dispensing of liquors by a club was not a sale, for the reason that clubs had been in existence and liquors had been furnished in the same manner for many years before the prohibitive act was passed, but

it was conceded that the general words of the law made
the sale of liquors without a license illegal anywhere, and
the court considered the question whether dispensing liq-
uors in the club constituted a sale as a judicial and not a
legislative question. So considered, the court concluded
that there was no sale, partly because the club received no
profit on the liquor consumed by the members, so that one
usual incident of a sale was not present, but principally on
the ground that the dispensing of liquors and payment for
them by the members were merely an equitable distribution
of the common property. The court said that the members
were all owners, in equal shares, of the liquor when pur-
chased; that it would be inequitable to require members
who do not drink liquor to pay for liquor drank by others;
that a proper and equitable way to distribute the advantages,
comforts and luxuries of the club among the members was
to require the member who drank the liquor to pay for what
he drank and those who did not touch the liquor to pay
nothing. The other case which we are asked to specially
consider is *State* v. *St. Louis Club*, 125 Mo. 308. That was
an information in the nature of a *quo warranto* against the
St. Louis Club, a corporation formed with the object of pro-
moting by social intercourse the bodily and mental health
of the members and by friendly exchange of views and dis-
cussions to advance the commercial prosperity of the city
of St. Louis. The membership of the club was limited to
four hundred residents of the city of St. Louis, and the en-
trance fee was $100 and the annual dues $80. The mem-
bers obtained liquors in practically the same way as shown
in the plea in this case and no profit accrued to the club.
The court found the cases in conflict and irreconcilable, but
held that the legislature never intended that a corporation
should be licensed to sell liquor; that the scheme of the
club was not a mere device to sell liquor in defiance of law,
and that the dispensing of liquors was a mere incident and
subsidiary to the higher and chief purpose of the corpora-

tion, which was advancement, by association, of the bodily and mental health of its members. The court decided that the distribution of intoxicating liquors by a club of that character is not a sale, although it was said that technically it does amount to a sale for some purposes. These cases we think serve to confirm what was said in the case of the Law and Order Club as to the ingenuity expended in attempting to show that furnishing liquors to members of a club for stipulated prices paid by the members is not a sale, and that no such proposition would receive attention in a case of different character.

It is undoubtedly equitable, as said in the Pennsylvania case, that the members of a club who drink the liquor should pay for it and that those who do not touch it should not pay anything, but we do not see how it can be said that the transaction is merely an equitable distribution between the members of property belonging to them in equal shares. The liquor belongs to the corporation as a legal entity and no member owns any share of the liquor, as a tenant in common with the other members or otherwise. An association organized merely for social, literary, scientific or political purposes, although not incorporated, is not a partnership. (25 Am. & Eng. Ency. of Law,—2d ed.—1137.) A member of such an association has no individual right or interest in the property and owns no proportionate share of it, but only has a right to the joint use so long as he continues to be a member. Even if they were tenants in common, a transfer of a specific part of the property to one for a stipulated price would be a sale. Appellant, however, is incorporated, and its stockholders are not tenants in common of its property but the title is in the corporation. The right of a stockholder is to participate, according to the amount of his stock, in the profits, and upon the dissolution of the corporation to share in the assets remaining after the payment of debts. If a member should clandestinely enter the club house and withdraw from what is called the com-

mon property as much of the liquor as would be represented by his interest as a member, it would hardly be contended that the act would not be larceny. The arguments presented to show that the dispensing of liquors for fixed prices paid by the member is not a sale, if applied to the case supposed or any other conceivable transaction, would certainly be unique. We agree with the views expressed in *State* v. *Easton Social, Literary and Musical Club,* 73 Md. 97, that there is no occasion to be astute and to indulge in questionable refinements in order to relieve these corporations of the just consequences of their acts, or to endeavor by artificial or fictitious reasonings to permit persons in combination to do what individuals without combination could not do.

The fact that there is no profit in a sale does not deprive the transaction of its character as a sale, and surely it makes no difference that the sale of the liquor is only incidental to the main purpose of the club. (*Mohrmann* v. *State,* 105 Ga. 709.) The sale of liquor is but an incident to the business of a drug store or restaurant. It is certainly but a trifling incident to the business of a large hotel. The business is carried on in department stores, where it is but a minor and incidental branch of the whole business. (*City of Chicago* v. *Netcher,* 183 Ill. 104.) It is immaterial whether the main purpose of a corporation is social pleasure or making money by the sale of merchandise if intoxicating liquor is sold at retail as an incident of the main purpose or otherwise, and neither is the fact that the public, generally, are not admitted.

We are convinced that the former decision of the question here involved was correct, and the judgment of the superior court is affirmed.            *Judgment affirmed.*