*232
 
 Opinion
 

 KINGSLEY, J.
 

 In two cases (consolidated below and here) defendants were charged in municipal court with violating section 12101 of the Education Code,
 
 [1]
 
 in that they had wilfully and unlawfully refused to send their children to public schools. They were found guilty; on appeal, the superior court reversed the convictions. On certification by that court (rule 63(a), Cal. Rules of Court), we ordered the cases transferred to us for hearing and decision. We reverse the convictions.
 

 In the municipal court, defendants sought to raise two defenses:
 
 [2]
 
 (1) that they were the subject of invidious prosecution within the meaning of
 
 Murgia
 
 v.
 
 Municipal Court
 
 (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]; and (2) that, the elementary school involved being “segregated” within the meaning of
 
 Crawford
 
 v.
 
 Board of Education
 
 (1976) 17 Cal.3d 280 [130 Cal.Rptr. 724, 551 P.2d 28], they had a constitutional right to keep their children out of that public school.
 

 I
 

 We reject the
 
 second of those
 
 defenses. Similar contentions have been made, and rejected, in another jurisdiction
 
 (State v. Vaughn
 
 (1965) 44 N.J. 142 [207 A.2d 537], )
 
 [3]
 
 We are not cited to, nor have we discovered any California cases dealing with that contention. In argument before us, defendants laid stress on the decision of the United States Supreme Court in
 
 Wisconsin
 
 v.
 
 Yoder
 
 (1972) 406 U.S. 205 [32 L.Ed.2d 15, 92 S.Ct. 1526]. That case is not here in point for two reasons: (1) in
 
 Yoder,
 
 enforcement of the state’s compulsory education law ran counter to admittedly valid religious beliefs of the parents, members of the Amish religion; (2) the record showed that the education given to the Amish children in the Amish community was of substantial educational value,
 
 *233
 
 even though not the exact equivalent of the secondary education therein involved. In the case before us, no issue as to religious freedom is involved, nor is there any showing or contention that these defendants provided their children with any alternative educational program.
 

 Even though
 
 Crawford,
 
 and other desegregation cases, have characterized segregated education as bad and harmful, in no case have those courts attempted to order all segregated schools closed immediately. In the pioneer case of
 
 Brown
 
 v.
 
 Board of Education
 
 (1954) 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180], the direction was that desegregation be accomplished “with all deliberate speed,” not “right now.” In
 
 Crawford,
 
 our Supreme Court merely directed the school board to prepare and present a plan, that would accomplish desegregation, to take effect only after further judicial proceedings. In light of that resolution of the segregation issue, we cannot agree that parental belief in the evils of segregated education justifies the denial to their children of
 
 all
 
 educational experience.
 

 II
 

 However, we conclude that procedural errors occurred in connection with defendants’ attempt to support their defense of invidious law enforcement. In support of that defense, defendants’ offer of proof, reasonably construed, was to the effect that, because they had been active in protesting the segregation policies of the school district and, in particular of the elementary school herein involved, they had been subjected to personal harassment by the police, acting at the instigation of the school authorities;
 
 [4]
 
 and that, because of, and solely because of, their vigorous use of their First Amendment rights to protest the policies of the school and the school system, they, and they alone, had been singled out for prosecution under the Education Code.
 

 We conclude that those allegations, if proved, would constitute a defense under
 
 Murgia.
 
 In an attempt to secure the evidence necessary to support the contention that they had been singled out for prosecution, defendants sought discovery to elicit information as to the number of students absent from schools in the district for a period of time comparable to that herein involved whose parents had been subjected to
 
 *234
 
 prosecution and whose absences were not exempt. The trial court refused district-wide discovery but did grant limited discovery concerning the elementary school involved. That order read as follows: “Discovery as allowed in the records of the Los Angeles Unified School District, the Magnolia Elementaiy School and the city attorney of the City of Los Angeles insofar as the Magnolia Elementary School is concerned as follows: Number 1, the number of students as being absent from Magnolia Elementary School for a period of 19 or more school days within a 37 school day period during the school year 1974-’75, as of the period September 11, 1974 (the first day of school in the aforesaid school year) through and including October 31st, 1974, the date of the charge set forth in the Complaint, which absences were not exempted nor excused.” To that discovery order, the People replied as follows:
 

 “As per Item 1, the total number of such students not exempted is 25, including the two students filqd against. The meaning of the word ‘excused’ is unclear at this time as used in that court order.” At the next court hearing, counsel for the People stated, for the record, that:
 

 “Mr. Hadlen: 28 total children involved in a similar situation as the defendants’ children. 25 of them are exempt or excused—excuse me, their parents are exempt or excused from prosecution either because the children are under age—that is, under six years old or because the parents moved out of the school district and enrolled their children in other schools. In essence that is why none of the other parents were prosecuted or have been.” Faced with that significant revision of the response to the discovery order, defendants sought a continuance and an order for discovery over a broader area. The request was peremptorily refused.
 

 Invidious prosecution does not appear merely because not every violator is prosecuted, if it appears that there were rational reasons for selective use of a prosecutor’s time and staff.
 
 (People
 
 v.
 
 Superior Court (Hartway)
 
 (1977) 19 Cal.3d 338 [138 Cal.Rptr. 66, 562 P.2d 1315].) Thus, to support their defense, defendants were required to show both that they had been selected out of a much larger number equally subject to prosecution and that that selection was based on ground not the result of a rational selection. Thus if defendants were selected only because of their being leaders in a “parent strike,” a trial court might well conclude that such a selection rested on a rational basis—that of making an example designed to discourage followers from continuing the “strike.” As to that element, the offer of proof made in
 
 *235
 
 the trial court should not summarily have been rejected, since defendants offered to prove that they had not been prosecuted for their prominence in any “parent strike” but because of their earlier exercise of legitimate political expression.
 

 But, in connection with convincing a trial court that the prosecution was for an “invidious” purpose, defendants were entitled to show that only persons who had thus incurred the enmity of school authorities were being prosecuted. If, in fact, few if any parents who had violated the compulsory education law were prosecuted, a trial court might draw the inference that such a selective enforcement was grounded in the kind of motivation that
 
 Murgia
 
 held unlawful. When the People recanted on their earlier admission that, even in one school, only two out of twenty-eight parents had been selected for prosecution, defendants were entitled to pursue further discovery to find out if the newly stated proportion of two out of three was actually representative of the district’s overall policy. To deny the time, and further discovery,
 
 [5]
 
 for that end was an abuse of discretion.
 

 The judgments are reversed.
 

 Files; P. J., and Dunn, J., concurred.
 

 A petition for a rehearing was denied July 28, 1977, and appellants’ petition for a hearing by the Supreme Court was denied August 25, 1977. Mosk, J., and Manuel, J., were of the opinion that the petition should be granted.
 

 [1]
 

 "Each person between the ages of 6 and 16 years not exempted under the provisions of this chapter is subject to compulsory full-time education. Each person subject to compulsory full-time education and each person subject to compulsory continuation education not exempted under the provisions of Chapter 7 (commencing at Section 12551) shall attend the public full-time day school or continuation school or classes for the full time for which the public schools of the city, city and county, or school district in which the pupil lives are in session and each parent, guardian; or other person having control or charge of such pupil shall send the pupil to the public full-time day school or continuation school or classes for the full time for which the public schools of the city, city and county, or school district in which the pupil lives are in session.”
 

 [2]
 

 It is not denied that the defendants had kept their children out of school for the period alleged in the complaints.
 

 [3]
 

 Compare
 
 In re Skipwith
 
 (1958) 14 Misc.2d 325 [180 N.Y.S.2d 852],
 

 [4]
 

 The trial court denied discovery directed to further proof of those allegations. We conclude that at least some discovery of police records should have been allowed.
 

 [5]
 

 We do not hold that the trial court may not limit discovery to a comparable period of time and to a reasonably representative number of elementary schools, randomly selected.