MR. JUSTICE CARRIGAN
delivered the opinion of the Court.
The juvenile court adjudicated Y.D.M., the thirteen-year-old appellant,[1] to be a child in need of supervision (CHINS)[2] based on a jury’s determination that she had violated Colorado’s compulsory school attendance law, section 22-33-104, C.R.S. 1973. We reverse and remand for a new trial.
*406 At trial the official attendance records kept by the minor child’s homeroom teacher revealed that Y.D.M. had been absent 55 of 94 schooldays during the first semester of the 1976-77 school year. Reasons for these absences advanced by the child’s mother and the school social worker were illness, failure to catch the school bus because of inconsistent scheduling, and desire to avoid harassment by a group of boys at school.
The jury found that Y.D.M. had been absent from school nine or more days during the first semester of 1976-77 school year, in violation of the statute which required that she attend school for at least 172 days each school year. Section 22-33-104(1), C.R.S. 1973. They also found that she had failed to prove by a preponderance of the evidence any of the statutory defenses, i.e., that the absences were justified by illness, injury or mental or emotional disability. Section 22-33-104(2)(a) and (2)(c), C.R.S.1973.
The appellant was determined to be a child in need of supervision and placed on probation subject to her normal obligation to attend school regularly. Section 19-l-103(5)(a), C.R.S. 1973 (1978 Repl. Vol. 8).
Appellant here argues that the General Assembly exceeded its constitutional authority by enacting section 22-33-104. She further asserts that the trial court denied her due process in placing on her the burden of proving, by a preponderance of the evidence, the asserted justifications for her absences. We do not agree with these contentions. We do, however, agree with the appellant’s assertion that the trial court committed reversible error in failing to instruct the jury that duress is an affirmative defense to a charge of violating section 22-33-104.
I. Constitutionality of Compulsory School Attendance Law.
The Colorado Constitution, in Article IX, section 11, states:
“ Compulsory education. The general assembly may require, by law, that every child of sufficient mental and physical ability, shall attend the public school during the period between the ages of six and eighteen years, for a time equivalent to three years, unless educated by other means.”
Colorado’s compulsory school attendance law, which Y.D.M. was determined to have violated, provides:
“Every child who has attained the age of seven years and is under the age of sixteen years, except as provided by this section, shall attend public school for at least one hundred seventy-two days during each school year, or for the specified number of days in a pilot program which has been approved by the state board under section 22-50-103(2).” Section 22-33-104, C.R.S.1973.
The appellant contends that the General Assembly, in enacting section 22-33-104,[3] which requires school attendance for more than three years, viol *407 ated the state constitution because the above-quoted language of Article IX, section 11, restricts the legislature’s power to compel school attendance to no more than three years.
The people of Colorado, in adopting the state constitution, created the General Assembly and vested it with plenary power to adopt general laws, subject only to the restraints and limitations of the state and federal constitutions. Colo. Const., Art. Ill; Colorado State Civil Serv. Employees’ Ass’n v. Love, 167 Colo. 436, 448 P.2d 624 (1968); Mauff v. People, 52 Colo. 562, 123 P. 101 (1912); People ex rel. Tucker v. Rucker, 5 Colo. 455 (1880). The General Assembly, therefore, may enact any law not expressly or inferentially prohibited by the constitution of the state or of the nation. People v. Richmond, 16 Colo. 274, 26 P. 929 (1891); In re Kindergarten Schools, 18 Colo. 234, 32 P. 422 (1891).
Article IX, section 11 is not such a limit on the General Assembly’s power to compel school attendance for more than three years. It is obvious that the purpose of this provision was to encourage the General Assembly of a pioneer state to adopt compulsory education for at least three years. There is no plain, express limitation on the General Assembly’s authority to declare the state’s policy regarding compulsory school attendance. Since the provision is not clear, it is our duty to construe it in a manner which will effectuate its obvious purpose favoring school attendance. To adopt the construction sought by the appellant would do violence to the overall objective of the constitutional provision.
In construing Article IX, section 11 as not imposing a three-year maximum limitation on compulsory education, we bear in mind that “it is a constitution we are expounding.” McCulloch v. Maryland, 17 U.S. 316, 407, 4 L.Ed. 579, 601 (1818) (Marshall, C.J.). Indeed this court very early recognized that:
“[n] arrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves and designed as a chart upon which every man learned and unlearned, may be able to trace the leading principles of government. A constitution is to be construed as a frame of government or fundamental law and not as a mere statute.” Denver v. Mountain States Telephone and Telegraph Co., 67 Colo. 225, 228, 184 P. 604, 606 (1919).
In order to assure the continuing vitality of our state constitution beyond an age when brittle words lose life and relevance to unforeseen problems, we must consider “the object to be accomplished and the mischief to be avoided” by the provision at issue. Inst. for the Educ. of the Mute and *408 Blind v. Henderson, 18 Colo. 98, 104, 31 P. 714, 717 (1892).
This 1876 constitutional provision reflects the progressive attitude toward education that prevailed when Colorado was still primarily a frontier society of miners, farmers, ranchers, shopkeepers, and traders endeavoring to meet the responsibilities of statehood. The framers of'our constitution recognized the importance of an informed, educated electorate to the preservation of representative government.[4] Consequently the people wisely encouraged the General Assembly to enact compulsory school attendance for their children. See People ex rel. Vollmar v. Stanley, 81 Colo. 276, 255 P. 610 (1927).
The ensuing century has dramatically changed Colorado. Fortunately, however, our 103-year-old constitution endures because its principles are adaptable to changing times. Because of the urbanization, industrialization and growing complexity of our state, the general purpose expressed in Article IX, section 11, to encourage compulsory education is more important today than in 1876. Consequently, if we are to preserve the spirit and intent plainly manifested in the language we interpret, we cannot adopt a narrow construction that this provision absolutely forbids the General Assembly to require school attendance for more than three years. As Mr. Justice Oliver Wendell Holmes, Jr., so aptly stated: “The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints.” Bain Peanut Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482, 491 (1931).
The General Assembly, by enacting section 22-33-104, has recognized the crucial role of education in our modern society, just as the framers of our state constitution recognized it over a century ago. By that enactment the legislature did not transgress, rather it faithfully carried out, the intent and purpose of Article IX, section 11. We hold, therefore, that the General Assembly did not exceed its constitutional authority in enacting the compulsory school attendance law.
II. Burden of Proof.
The trial court instructed the jury that the prosecution must establish beyond a reasonable doubt that the minor child was between the ages of seven and sixteen years and was absent from school for nine or more days during the first semester of the 1976-77 school year. Sections 19-3-106 and 22-33-104, C.R.S. 1973.
*409 Further the court instructed the jury that the appellant had the burden of proving by a preponderance of the evidence that any absences totalling nine or more days were justified by temporary illness, injury or some mental or emotional disability. Section 22-33- 104(2)(a) and (c). Appellant here asserts that imposing on her the burden of proving one or more of the stated justifications for noncompliance with the school attendance law constituted a denial of due process. We disagree.
A juvenile proceeding concerning a child in need of supervision is not a criminal or quasi-criminal case. It bears no punitive aspect. Rather it is designed to protect and guide the child in the manner which will best serve the interests of the child and society. Sections 19-1-102 and 19-1-103(5), C.R.S. 1973. The protective purposes of the proceeding are not hindered by imposing on one who asserts one of the statutory excuses for noncompliance the burden of proving that excuse. Cf. section 18-1-407, C.R.S.1973.
Certain procedural protections have been extended to a child involved in a delinquency adjudication. People in the Interest of R.A.D., 196 Colo. 430, 586 P.2d 46 (1978); People in the Interest of C.B., 196 Colo. 362, 585 P.2d 281 (1978). In delinquency proceedings, however, the child stands charged with activity which would constitute a crime if done by an adult. Section 19-1-103(9).
In contrast, a CHINS proceeding has as its purpose determining whether the child is a truant, a runaway or a danger to himself or others. Section 19-1-103(5), C.R.S. 1973. Moreover, being adjudicated a child in need of supervision does not stigmatize the child as does being la-belled a juvenile delinquent or a criminal. Because the quasi-criminal character of a delinquency proceeding is lacking in a CHINS proceeding, the latter actions are appropriately governed by the rules of civil procedure. C.R.C.J. 1.
Furthermore, it is not manifestly unfair to place on the child the burden to show that her absences from school were excused, for the facts which prove or disprove a claimed excuse are uniquely within the knowledge of the child and its parents or custodian. To obligate the People to present evidence to disprove every asserted justification for absence from school would be “too cumbersome, too expensive and too inaccurate.” Patterson v. New York, 432 U.S. 197, 209, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281, 291 (1977); see also State v. Vaughn, 44 N.J. 142, 207 A.2d 537 (1965). Moreover, it would require that the People prove a negative in situations where a thorough investigation could unearth no evidence. Fundamental fairness to the child does not require us to impose on the People an obligation to perform an impossible or futile task.
III. Instruction to the Jury.
The appellant presented evidence that she had been harassed, assaulted, and robbed in the school area by young boys. She contended *410 that it was her fear of additional harassment and physical abuse that caused her to avoid going to school. This evidence clearly raised a jury issue of duress as an excuse for the child’s absences from school. By refusing to instruct the jury regarding this material issue when there was some evidence to support the appellant’s position, the trial court committed reversible error. Dilliard v. Wilson, 95 Colo. 38, 32 P.2d 263 (1934).
Duress has traditionally been recognized as a defense in both criminal and civil actions. See. e.g., section 18-1-708, C.R.S. 1973; Moise Bros. v. Jamison, 89 Colo. 278, 1 P.2d 925 (1931); Adams v. Schiffer, 11 Colo. 15, 17 P. 21 (1888). We hold that this common law defense has not been abrogated by the compulsory attendance statute.
Although section 22-33-104 specifically enumerates several circumstances which, if proven, render the compulsory attendance law inapplicable, this list of justifications is not exhaustive. No language to that effect is expressed and none should be implied.
“The maxim, expressio unius est exclusio alterius, is not of universal application in the construction of statutes. The legislative intention is to be taken according to the necessity of the matter and according to that which is consonant to reason and sound discretion.” Town of Trinidad v. Simpson, 5 Colo. 65, 66 (1879), quoted in People v. Gibson, 53 Colo. 231, 243, 125 P. 531, 536 (1912).
The law should not impose on a child the Hobson’s choice of either subjecting herself to physical abuse or violating the compulsory school attendance law. Fairness and reason dictate that duress, if proven by the child, be a valid justification or excuse for non-attendance at school.
In view of our holding in Part II, the appellant shall bear the burden of proving duress by a preponderance of the evidence. Whether or not the child’s absences were due to duress is a question of fact for the jury to determine. Because the jury was not allowed to consider this issue, we remand the cause for a new trial consonant with this opinion.
MR. JUSTICE GROVES concurs in the result.
MR. JUSTICE ERICKSON concurs in part and dissents in part.
MR. JUSTICE PRINGLE does not participate.

 The respondent, M.M., is the minor child’s mother.

 Section 19-l-103(5)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

 School attendance is required for 172 days for nine years which totals 1,548 days or approximately 4.2 years.

 This enlightened attitude of the framers toward education was further evidenced in Colo. Const., Art. IX, § 2 which required that the legislature “as soon as practicable provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously.”